# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

ERIC R. BURROWS,

        Plaintiff,

v.

                                        Case No.:  2: 18 CV 48

JOEL CLARK,

and

CAMERON STEWART,

individually
and in their official capacities,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

**NOW COMES** the Plaintiff, Eric R. Burrows, by and through his counsel, Andrew Shaw of Shaw Law Offices, alleges and shows the court as follows:

### JURISDICTION AND VENUE

1. This is an action for pursuant to 42 U.S.C. § 1983 based upon the violations of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

2. Jurisdiction over Plaintiff's claims is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1343, based on 42 U.S.C. § 1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

1

3. Venue in the United States District Court for the Eastern District of Wisconsin is appropriate under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), in that the events and conduct complained of herein all occurred in the Eastern District.

## PARTIES

4. Plaintiff Eric R. Burrows (hereinafter "Plaintiff") is an adult citizen residing at, village of Elkhart Lake, County of Sheboygan, State of Wisconsin, at all times relevant.

5. Defendant Joel Clark is a law enforcement officer for the Sheboygan Police Department, 1315 N. 23rd Street, Sheboygan, Wisconsin. Defendant Clark was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the Sheboygan Police Department at all times material.

6. Defendant Cameron Stewart is a law enforcement officer for the Sheboygan Police Department, 1315 N. 23rd Street, Sheboygan, Wisconsin. Defendant Clark was acting under color of state law and in the course and scope of his employment as a law enforcement officer with the Sheboygan Police Department at all times material.

## FACTUAL BACKGROUND

7. Plaintiff Eric R Burrows and Erica Wondra dated in high school and reconnected in January 2015. They lived together from January 2016 to June 25, 2016.

8. On or about June 25, 2016, Wondra and Burrows broke up, and Wondra moved out of Burrows' house.

2

9. Erica Wondra explained in a narrative written for the Sheboygan Police Department that it was genuine romantic break-up by stating: "I told him that I love him and wanted to know how I could do better." and "I felt like Eric's love for me was very conditional."

10. Erica Wondra and Eric Burrows remained in contact through numerous texts and emails after their breakup in June 2016 to approximately August 18, 2016, the date of Burrows' arrest. According to the Cellebrite extraction of Burrows' emails, Wondra responded to Burrows on 42 occasions during the period from July 20, 2016 through August 18, 2016, and none of Wondra's responses stated that Burrows should stop emailing her.

11. On August 8, 2016, Officer Charlot Endsley of the Sheboygan Police Department was sent to International Autos "regarding a harassment investigation." Erica Wondra called 911 Dispatch to report "threatening voicemails received from a *female* party" directed at her and suspicious letters received by her employer, International Autos. The first voicemail Wondra received on August 3, 2016 and the second voicemail happened on August 8, 2016, the same day she called police. The voicemails described by Erica as being a *woman's* voice. Both voicemails were recorded at the scene by officers. The *female* voice captured in both phone messages made several statements threatening Erica, telling her to stay away from "Eric" and "Ben." According Officer Endsley, the *female* voice in both voicemails was the same.

12. Detective Clark took over the investigation after Officer Endsley's briefing of the complaint.

13. On August 10, 2016, Defendant Detective Clark met with Erica Wondra at the police department to discuss her complaint and review the letters received by International Auto. Detective Clark drafted a supplementary report after reviewing these letters and concluded that "The had [sic] writing appears to be that of a *female* with only a return address of 'Sheboygan.'" In his report, Detective Clark quoted these letters that appeared to be written by a female; one letter included, "I would take this very serious cause *I have nothing to lose besides him*."

14. According to Defendant Detective Clark, Erica Wondra and Eric Burrows exchanged multiple emails between July 31, 2016 and August 9, 2016. According to Clark's report, Clark did not characterize any of Eric Burrows' emails as being threatening in his report; rather, his report indicates in part that, "The majority of these emails are Eric expressing his love for Erica and trying to rekindle the relationship with her," while other emails from Eric Burrows involved "asking her where a set of car keys were" and "some personal property (hair dryers) left at his house." None of the emails contained any threats of violence by Eric Burrows, nor was there any evidence of psychological distress by Erica Wondra.

15. On August 13, 2016, Detective Clark spoke with Jason Jacquart, Erica Wondra's ex-husband. Jacquart told Detective Clark about a letter mailed to him from Sheboygan. According to Clark's report, the content of the typed letter addressed to Jacquart suggested that it had a *woman* author, it threatened, "I already warned her once," referring to Erica Wondra, and stated in part, "…NOW the [expletive] will pay and find out what kinda crazy bitch she has [expletive] with."

4

16. On August 17, 2016, a box addressed to Erica Wondra was dropped off at the main office of her apartment complex in Sheboygan. The apartment manager, called Wondra and told her that a box had been delivered to the complex that morning for her. Wondra called Detective Clark, stating that she received a package at her apartment. According to the apartment manager, two different phone calls had come into the apartment office that day, both inquiring about the status of the box delivery. The first call allegedly appeared on caller identification as coming from "B B Metal Proce." Detective Clark had previous knowledge of Eric Burrows' position as Vice President of B & B Metals, Inc. in Newton, Wisconsin. The secretary told officers that the caller was a man. The second call, according to the secretary, allegedly came the same day from a *woman* who inquired about a package to be delivered to Erica Wondra. The call allegedly came from Mr. Burrows' cell phone. Officers retrieved the sealed package from the apartment complex staff and ultimately located a small non-poisonous baby snake inside of it with a typed note, which included a characterization of Erica Wondra being a snake.

17. Erica Wondra never saw the sealed box. Wondra never took possession of the sealed box or viewed its contents.

18. On August 17, 2016, Sheboygan police took the sealed box from the apartment complex to get it x-rayed at a local hospital. The box was taken and finally opened at Sheboygan Police Department by Officer Paul Olsen. Deborah Knockson, a local reptile expert who was present when the box was opened,

identified the contents of the box as a small baby non-poisonous ball python snake, routinely kept as a household pet.

19. On August 17, 2016, when Detective Clark was the lead detective on the investigation against Burrows, the CAD computer request for arrest was issued by the Sheboygan Police Department, which stated as follows:

> 8/17/2016 18:57:52 D926 Narrative: ATL
>
> **\*\*OFFICER SAFETY\*\*** ERIC R BURROWS… A **TEMPORARY WARRANT HAD BEEN ENTERED** REGARDING SHEBOYGAN CASE C16-15346 STALKING. VICTIM IS [E.W.] …ERIC IS **KNOWN TO BE A NAZI SYMPATHIZER** AND **IS HEAVILY ARMED AT THIS RESIDENCE**. HE WILL **LIKELY BE ARMED IN ANY VEHICLE HE IS DRIVING**… ERIC MAY BE DRIVING ANY ONE OF THE LISTED VEHICLES BELOW…[LIST OF VEHICLES]….**\*\*USE CAUTION WHEN COMING IN CONTACT WITH ERIC** AS HE HAS **REPEATEDLY STATED HE HAS NOTHING TO LOSE**. (Emphasis added.)

20. The CAD Narrative falsely claimed that "Use caution when coming in contact with Eric as he had repeatedly stated he has *nothing to lose*," when Detective Clark fully knew the "nothing to lose *besides him*" quote was from a letter that appeared to be written by a *female* author, according to Detective Clark's August 10, 2016 supplemental report:

> I met with Erica on today's date at the Sheboygan PD. She brought with her two letters that had been delivered via mail to her employer yesterday. …Both letters appeared to have been mailed via US mail. …The writing appears to be that of a *female*….
>
> The contents of the letter reads:
>
> "International Motors Sheboygan
> Here is a Suggestion
>
> If I were you I would immediately do something about that blonde whore that you have working in the Subaru Sales Depart. Erica Wondra That bitch has been screwing my man Ben….I would take this very serious cause *I have nothing to lose besides him*. ….(Emphasis added.)

6

21. The charges of this underlying stalking case do *not* allege any use of a gun. Eric Burrows does *not* have any past criminal history involving guns. On the contrary, Burrows is a respected businessman.

22. Detective Clark and Detective Stewart did *not* go to a judge to secure an arrest warrant, although they had ample time to do that. Upon information and belief, local judges were available for the purpose of securing an arrest warrant on both Wednesday August 17, 2016 and Thursday August 18, 2016.

23. On August 18, 2016, Defendants Detective Joel Clark and Detective Cameron Stewart traveled to the neighboring county, Manitowoc County, for the purpose of orchestrating the arrest of Burrows. Detective Clark summarized Stewart's and his serveillance in Manitowoc County and Clark's request for assistance from Manitowoc County Sheriff's Department as follows:

> On 8/18/2016 Det. Stewart and myself conducted surveillance on B&B Metals in Newton, WI [Manitowoc County]. At approximately 4:46 pm we observed a blue Ford F450 truck belonging to Eric Burrows leave B&B and proceed south on Hwy 42. I had requested assistance from the Manitowoc County Sheriff's Office and they performed a felony stop on the vehicle due to the weapons history with Eric.

24. Contrary to Defendant Detective Clark's August 18, 2016 report falsely claiming that Manitowoc County Sheriff's officers performed a felony stop due to a "weapons history," in fact, Eric Burrows had *no* "weapons history."

25. Manitowoc County deputies were under the false impression that it was a "high-risk traffic stop," as explained in Manitowoc Deputy Resch's report:

> 8/18/16: I, Deputy Resch and Deputy Hemauer responded to B&B METALS to assist SBSO with apprehending ERIC R. BURROWS on a Felony Warrant. Two SBSO Dets. were already on scene at B&B METALS where BURROWS was working. It was decided to conduct a

7

> traffic stop on BURROWS rather than enter the property due to BURROWS being an avid gun collector, his Nazi affiliation, and him recently stating that he had nothing to lose.
>
> Deputy Hemauer and I were position on Meeme Rd B of CORD XX, and Lt. Cummings was positioned on W Washington Rd. the SBSO Dets. advised that BURROWS was leaving the B&B METALS property and headed SB on STHY 42. A high-risk traffic stop was conducted on County Line Rd W of STHY 42. ....

26. Acting upon the notice and false officer safety warnings, five police vehicles descended upon Eric Burrows' vehicle, with several armed officers ready to shoot or kill Eric Burrows, due to the hyper-exaggerated safety warning falsely described in the CAD report. *No* crime was taking place and Burrows had *no* gun in his possession. Sheboygan officers Detective Clark and Detective Stewart were present, literally orchestrating and supervising the Manitowoc officers who took Eric Burrows from his truck, pushed him to the ground, handcuffed him, and then secured him in a Manitowoc squad car. Contrary to the Sheboygan Police Department's CAD notice, Burrows was *not* armed and did *not* resist the officers with violence.

27. After Burrows had been secured in the Manitowoc squad car, Detective Clark and Detective Stewart then completed their orchestrated multi-step plan of arresting and taking custody of Eric Burrows. Detective Clark and Detective Stewart searched Burrows' truck for evidence at the scene in Manitowoc County while they had Burrows in back of a patrol car, seizing his cell phone and papers without a warrant:

> Once Burrows was in custody, ...While he was still at the scene [in Manitowoc County] in the back of a patrol car he asked me to retrieve his phone from the truck. I advised him that I was seizing his phone pending a search warrant...The interior of the truck in question was search[ed] due

8

to the fact that …I felt it probable that there could be some evidence of stalking in the vehicle.

I found Eric's phone on the dash of the truck and took custody of it. I was called to the driver's door by Detective Stewart who stated he had found a yellow sheet of legal pad paper and that the handwritten note on the sheet was similar to the letters that had been sent to Erica and her employer and acquaintances. It was seized along with a smaller legal pad that had some written notes on it.

28. Upon information and belief, despite the stop involving five squad cars and several officers, there were no police/squad cam or audio recordings of the August 18, 2016 stop.

29. After Eric Burrows was taken into custody on August 18, 2016 in Manitowoc County, he was transported to Howards Grove in Sheboygan County where he was turned over to Sheboygan Officer Matthew Rakow who then took him to the Sheboygan Police Department. After a short interrogation by Detective Clark which no confession was obtained, Burrows was jailed later that evening.

30. Also later that evening on August 18, 2016, Sheboygan police officers obtained a warrant to search Burrows' residence. The warrant to search Burrows' residence did not include an application for entry into his truck, or for seizure of his cell phone and papers in the truck, a seizure that had already occurred earlier that day.

31. Eric Burrows was scared at the August 18, 2016 scene that he would get shot or killed and is still traumatized by this highly aggressive use of police force used against him.

32. On April 21, 2017, Defendant Detective Joel Clark had Eric Burrows' vehicle pulled over by his house with four squad cars in order to execute a search warrant on Burrows for hair follicles:

9

On today's date, Det. Olsen and myself were assisted by two Sheboygan County Deputies in the execution of a search warrant on Eric Burrows' person. I had obtained a search warrant to collect 30 plucked hairs and a buccal swab from Burrows for submission to the FBI lab in Quantico, VA, reference in this case. The Sheboygan County Deputies utilized their marked squads to perform a traffic stop on Burrows as he left his Sheboygan County Residence….

33.  On April 21, 2017, Defendant Detective Clark already knew that Eric Burrows had retained two attorneys. Either of Burrows' attorneys could have been contacted by police in order to get Burrows to show up at the Sheboygan Police Department to execute the search warrant for hair follicles. Further, at this date, Burrows was wearing a bracelet and had been self-reporting into the Sheboygan detention center every week. Prior to April 21, 2017, Burrows had been *cooperating* with police in this case.

34. Eric Burrows was scared and intimidated by the aggressive April 21, 2017 police stop, planned and orchestrated by Detective Clark. The April 21, 2017 stop triggered traumatic memories in Burrows' mind of the August 18, 2016 stop, where Burrows feared he would be shot or killed.

35.  Eric Burrows is anxious whenever he drives, which triggers traumatic memories in Burrows' mind of the August 18, 2016 stop of his vehicle, where Burrows feared he would be shot or killed.

36.  Eric Burrows has received counseling/therapy regarding his post-traumatic anxiety regarding the August 18, 2016 stop of his vehicle, where Burrows feared he would be shot or killed.

10

## COUNT I –DECLARATORY JUDGMENT THAT
## "TEMPORARY WARRANT" IS UNCONSTITUTIONAL /
## VIOLATES SEPARATION OF POWERS DOCTRINE
### (Against Defendant Joel Clark and Defendant Cameron Stewart)

37. Realleges by reference all of the allegations set forth in the paragraphs of this Complaint with the same force and effect as if herein set forth in full.

38. The U.S. Supreme Court has historically held that Separation of Powers doctrine regards separation of "assigned constitutional duties," where it is the "province and duty of the judicial department to say what the law is."

> In the performance of assigned constitutional duties, [regarding] each branch of the Government...the interpretation of its powers by any branch is due great respect from the others. ... Many decisions of this Court...have unequivocally reaffirmed the holding of *Marbury v. Madison*, 1 Cranch 137 (1803), that 'it is emphatically the province and duty of the judicial department to say what the law is.' *United States v. Nixon*, 418 U.S. 683, 703 (1974).

39. The U.S. Supreme Court has held that an arrest warrant "interpose[s] the magistrate's determination of probable cause between the zealous officer and the citizen." *Payton v. New York*, 445 U.S. 573, 602-03 (1980). The U.S. Supreme Court's reasoning is as follows:

> The arrest warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed between the citizen and the police, to assess the weight and credibility of the information which the complaining officer adduces as probable cause [citiation omitted]. To hold that an officer may act in his own unchecked discretion upon information too vague and from too untested a source would subvert this fundamental policy. *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963).

Wisconsin's law echoes the U.S. Supreme Court's holdings: An arrest warrant may be issued only by an impartial magistrate upon a showing of probable cause. *State v. Ward*, 231 Wis. 2d 723, 604 N.W.2d 517 (2000).

11

40. Wisconsin law enforcement officers cannot issue their own arrest warrants (i.e. "temporary warrant"). Such authority lies exclusively within the province of the judicial branch.

41. There is no such thing as a "temporary warrant" that can be issued by a law enforcement officer without a magistrate's determination of probable cause. Every warrant issued in the United States of America must contain facts, sworn to by the affiant, then signed by a judge or magistrate of that jurisdiction.

42. Defendant Clark and Defendant Stewart knew that a "temporary warrant" was issued and/or posted in the August 17, 2016 CAD report.

43. Defendant Clark and Defendant Stewart knew that the "temporary warrant" of the August 17, 2016 CAD report was *not* an official arrest warrant based upon a judge's determination of probable cause.

44. Defendant Clark and Defendant Stewart had ample time to obtain an official arrest warrant from a judge on Wednesday August 17, 2016 and Thursday August 18, 2016, but did not do so, to avoid the issue of a judge's determination of probable cause.

45. Defendant Clark and Defendant Stewart deliberately used the "temporary warrant" in the August 17, 2016 CAD report to convince Manitowoc County Sheriff's Department officers to stop and arrest Eric Burrows, without a judge's determination of probable cause.

46. Defendant Clark and Defendant Stewart deliberately used the "temporary warrant" in the August 17, 2016 CAD report to stop Eric Burrows and to search

12

and seize evidence out of his vehicle, without a judge's determination of probable cause.

47. Plaintiff Eric Burrows seeks a declaratory judgment that the "temporary warrant" (as found in the August 17, 2016 CAD report) is unconstitutional and/or a violation of the Separation of Powers doctrine.

**COUNT II – § 1983 ACTION**
**ARREST IN VIOLATION OF 4TH AMENDMENT**
**(Against Defendant Joel Clark and Defendant Cameron Stewart)**

48. Realleges by reference all of the allegations set forth in the paragraphs of this Complaint with the same force and effect as if herein set forth in full.

49. The Fourth Amendment and Article I, Sec. 11 of the Wisconsin Constitution establish the right of Wisconsin citizens to be secure from unreasonable searches and seizures. Under both federal and Wisconsin law, probable cause must exist to justify an arrest and to search and seize property. *State v. Kiper*, 193 Wis.2d 69, 82 532 N.W.2d 698 (1995) citing 1 LaFave, *Search and Seizure*, Sec. 3.1(b), at 544 (2d. ed.).

50. Defendant Joel Clark was acting under the color of state law and within the scope of his employment as a Sheboygan Police Department detective on August 17, 2016 and August 18, 2016, when orchestrating and acting regarding the August 18, 2016 arrest of Eric Burrows and search of his vehicle.

51. Defendant Cameron Stewart was acting under the color of state law and within the scope of his employment as a Sheboygan Police Department detective on August 17, 2016 and August 18, 2016, when orchestrating and acting regarding the August 18, 2016 arrest of Eric Burrows and search of his vehicle.

52. Defendant Joel Clark misused official power which is possessed by him only because he is Sheboygan Police Department officer/detective.

53. Defendant Cameron Stewart misused official power which is possessed by him only because he is Sheboygan Police Department officer/detective.

54. Defendants Joel Clark and Cameron Stewart misused false statements contained in the August 17, 2016 CAD report to convince Manitowoc County Sheriff's Department officers to stop Eric Burrows, without a judge's determination of probable cause.

55. Defendants Joel Clark and Cameron Stewart misused a so-called "temporary warrant" contained in the August 17, 2016 CAD report to convince Manitowoc County Sheriff's Department officers to stop Eric Burrows, without a judge's determination of probable cause.

56. On August 18, 2016, at the time of arrest of Eric Burrows, there was no probable cause to arrest Burrows for § 940.32 Stalking.

57. On August 18, 2016, at the time of arrest of Eric Burrows, probable cause was not met because Stalking requires a "course of conduct," pursuant to § 940.32, Wis. Stats, however, the information available to the police, at best, pointed to Burrows' possible involvement in a single act: the delivery of the non-poisonous baby snake to Erica Wondra's apartment complex. All of the other alleged acts, both in substance and delivery, were the work of an unknown *female*. A single act cannot constitute a "course of conduct."

58. On August 18, 2016, at the time of arrest of Eric Burrows, probable cause was not met because § 940.32 Stalking requires the element that the conduct caused

Erica Wondra to suffer serious emotional distress or induce fear in Erica Wondra of bodily injury or death. Defendant Clark reviewed emails and knew that Erica Wondra had been consistently emailing Eric Burrows throughout May 2016 to August 9, 2016, and Clark knew that none of Wondra's emails to Burrows stated that Burrows should stop emailing her. In reality, Erica Wondra, *herself*, contacted Eric Burrows *42 times* during the time period of May 2016 to August 18, 2016, which is the *direct opposite* of her suffering serious emotional distress or fearing injury or death.

59. Defendant Clark and Defendant Stewart both fully knew that there was *no* properly issued arrest warrant for Eric Burrows when planning, orchestrating, and acting during the August 18, 2016 stop and arrest of Burrows.

60. Defendant Clark and Defendant Stewart actively participated during every single step of their warrantless arrest plan.

61. On August 18, 2016, Defendants Clark and Stewart were out of their jurisdiction and not acting in their official capacity when conducting surveillance at Eric Burrows' business B&B Metals, located in Manitowoc County.

62. A police officer acting outside his or her jurisdiction does not act in his or her official capacity and does not have any official power to arrest. *State v. Slawek*, 338 N.W.2d 120, 121, 114 Wis.2d 332 (Wis. App. 1983).

63. There were no exigent circumstances that made seeking an arrest warrant impractical; Defendant Clark and Defendant Stewart surveilled and waited until the end of the work day on August 18, 2016 (a Thursday during courthouse hours,

15

during which an officer could seek a warrant) to stake out Burrows' place of employment and then to personally direct his arrest.

64. Defendant Clark and Defendant Stewart made no attempt to obtain a warrant for Burrows' arrest.

65. Defendant Clark and Defendant Stewart did *not* witness Eric Burrows commit a crime in Manitowoc County.

66. Upon seeing Eric Burrows leave his business in Manitowoc County, Defendant Clark personally requested assistance from the Manitowoc County Sheriff's Department officers.

67. Defendant Clark falsely claimed in his report that Manitowoc County Sheriff's Office performed a felony stop "due to the weapons history with Eric." Eric Burrows had *no* weapons history and *no* criminal record at the time of his arrest on August 18, 2016.

68. The arrest of Eric Burrows was, in every real substantive sense, effectuated at every step by Defendants Clark and Stewart. Manitowoc County Sheriff's Department officers literally did not possess the knowledge of case facts to determine whether or not they had probable cause to conduct lawful arrest. There is no evidence that Manitowoc officials had any personal knowledge of the allegations against Burrows, only the claim of stalking behavior with the misleading warning in the CAD narrative that he was armed and dangerous. Manitowoc officials could not lawfully arrest Burrows because they did not possess any knowledge of any facts to determine probable cause. Due to *not*

16

knowing the case facts, Manitowoc officers were merely following orders directly from Sheboygan Detectives Clark and Stewart who conducted the arrest.

69. Five squad cars and numerous armed officers were involved in the stop of Eric Burrows. Defendants Clark and Stewart orchestrated and supervised the Manitowoc County Sheriff Department officers who took Eric Burrows (Clark's and Stewart's suspect in Sheboygan County) from his truck, pushed him to the ground, handcuffed him, and then secured him in a Manitowoc squad car.

70. Contrary to false statements and misleading statements in the CAD report, Eric Burrows is *not* a Nazi Sympathizer, has *no* criminal history, and *no* history of violence. He had *no* guns with him in his truck. He was *not* armed. He did *not* resist the officers with violence.

71. Eric Burrows was scared at the scene that involved many law enforcement officers with tactical gear who were told that he was likely to be armed with "nothing to lose," and a police dog, and is *still* traumatized by that event. Burrows could have been shot or killed, based upon false information and misleading information contained in the CAD report, which Defendant Clark and Defendant Stewart deliberately misused to arrest Burrows without a warrant in neighboring Manitowoc County.

72. The exaggerated and false claims in the CAD report escalated the level of force to such extent that any actions by Eric Burrows perceived as non-compliance by armed officers, could have resulted in Burrows being seriously injured or killed.

73. Plaintiff Eric Burrows' constitutional rights were violated by Defendant Joel Clark's actions.

17

74. Plaintiff Eric Burrows' constitutional rights were violated by Defendant Cameron Stewart's actions.

75. Defendant Joel Clark acted with reckless indifference to the federally protected rights of Eric Burrows.

76. Defendant Cameron Stewart acted with reckless indifference to the federally protected rights of Eric Burrows.

**COUNT III – § 1983 ACTION**
**VIOLATION OF 4TH AMENDMENT**
**UNREASONABLE SEARCH AND SEIZURE**
**(Against Defendant Joel Clark and Defendant Cameron Stewart)**

77. Realleges by reference all of the allegations set forth in the paragraphs of this Complaint with the same force and effect as if herein set forth in full.

78. Immediately following Defendant Clark's and Defendant Stewart's unlawful arrest of Eric Burrows, they conducted an unlawful search of Burrows' person and of Burrows' vehicle.

79. Evidence seized during an unlawful search cannot constitute proof against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

"…[W]e have consistently rejected -- that a search unlawful at its inception may be validated by what it turns up." *Wong Sun* at 484.

80. According to the police report, Defendant Clark and Defendant Stewart searched Burrows' truck for evidence at the scene in Manitowoc County while they had Burrows in back of a patrol car, seizing his cell phone and papers without a warrant:

> Once Burrows was in custody, …While he was still at the scene [in Manitowoc County] in the back of a patrol car he asked me to retrieve his phone from the truck. I advised him that I was seizing his phone pending a

18

search warrant...The interior of the truck in question was search[ed] due to the fact that ...I felt it probable that there could be some evidence of stalking in the vehicle.

I found Eric's phone on the dash of the truck and took custody of it. I was called to the driver's door by Detective Stewart who stated he had found a yellow sheet of legal pad paper and that the handwritten note on the sheet was similar to the letters that had been sent to Erica and her employer and acquaintances. It was seized along with a smaller legal pad that had some written notes on it.

81. Defendant Clark and Defendant Stewart both fully knew or should have known that the search of Burrows' truck violated Wis. Stat. § 968.11 because a law enforcement may search the "person arrested" and "an area within such person's immediate presence:

968.11 Scope of search incident to lawful arrest.
When a lawful arrest is made, a law enforcement officer may reasonably search the person arrested and **an area within such person's immediate presence** for the purpose of:

1) Protecting the officer from attack;
2) Preventing the person from escaping;
3) Discovering and seizing the fruits of the crime; or
4) Discovering and seizing any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of the offense.

Because Burrows was already in custody inside a squad car, there was *no area* located in his truck that was in Burrows' "immediate presence," so the truck could *not* lawfully searched without a search warrant by Sheboygan Detectives Clark and Stewart, pursuant to Wis. Stat. § 968.11.

82. Plaintiff Eric Burrows' rights were violated by Defendant Joel Clark's actions involving the unlawful search and seizure of evidence.

83. Plaintiff Eric Burrows' rights were violated by Defendant Cameron Stewart's actions involving the unlawful search and seizure of evidence.

19

84. Defendant Joel Clark acted with reckless indifference to the federally protected rights of Eric Burrows.

85. Defendant Cameron Stewart acted with reckless indifference to the federally protected rights of Eric Burrows.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Burrows demands judgment against Defendant Joel Clark and Defendant Cameron Stewart as follows:

(1) Count I, in favor of Plaintiff Eric Burrows and against Defendant Joel Clark and Defendant Cameron Stewart, a declaratory judgment that the "temporary warrant" is unconstitutional and/or a violation of Separation of Powers Doctrine;

(2) Count II in favor of Plaintiff Eric Burrows and against Defendant Joel Clark and Defendant Cameron Stewart;

(3) Count III in favor of Plaintiff Eric Burrows and against Defendant Joel Clark and Defendant Cameron Stewart;

(4) Actual and compensatory damages sufficient to make Plaintiff whole;

(5) Punitive damages against Defendant Joel Clark and Defendant Cameron Stewart sufficient to punish them and to deter further wrongdoing;

(6) Attorneys' fees, litigation expenses, costs, and interest as provided by the law;

(7) Such other and further relief as the Court deems just and proper.

20

Dated at Milwaukee, Wisconsin, this 9th day of Jan, 2018.

Shaw Law Offices
Attorneys for Plaintiff

Andrew Shaw
WI State Bar No.: 01018100

---

## JURY DEMAND

---

Pursuant to Rule 38(b), Plaintiff hereby requests that all factual issues be tried to a jury of 12 persons.

Andrew Shaw
Attorney for Plaintiff
WI State Bar No.: 01018100

SHAW LAW OFFICES
P.O. Box 18353
Milwaukee, WI 53218
414 535-9626